**Dan H. COLEMAN, Appellant,**

v.

**DEPARTMENT OF LABOR and City of Wilmington Street and Sewer Department, Appellees.**

Superior Court of Delaware, New Castle.

Feb. 17, 1972.

Daniel M. Kristol, Wilmington, for appellees.

## OPINION

O'HARA, Judge.

Dan H. Coleman ("petitioner") appeals a decision of the Unemployment Insurance Appeals Board ("Board") denying him unemployment benefits pursuant to 19 Del.C. § 3315(2). That section states in pertinent part:

"§ 3315. Disqualification for benefits
An individual shall be disqualified for benefits—

(2) For the period of unemployment next ensuing after an individual has been discharged from his work for just cause in connection with his work."

Petitioner was employed in the street cleaning department of the City of Wilmington from December 29, 1967 through October 4, 1970. On the latter date, petitioner reported to work at the appointed time, but was given no immediate assignment. He started drinking and became sufficiently intoxicated that his foreman sent him home, without pay, for the remainder of the day.

Approximately one hour later petitioner returned, intoxicated, took a toy revolver from a bag and waved it in the air causing employees to scatter. Following this inci-

dent petitioner was sent home a second time and subsequently discharged the next day. The employer's "write up" accompanying petitioner's release indicated that he was fired for "drinking on the job".

The Board heard additional evidence consisting of the testimony of the petitioner and a Mr. McNutt, petitioner's foreman, and a representative of the Labor Department of the City of Wilmington. It appears that the petitioner concedes that he was intoxicated and that the subject revolver looked authentic. He further states that he had drank on occasion previously while on duty with other employees. In petitioner's opinion, this was accepted practice which was at times engaged in by his supervisors. Mr. McNutt testified that drinking was never allowed on the job. According to Mr. McNutt, the petitioner was discharged for both his intoxication and for creating a disturbance in the yard which interfered with the routine of the other employees. In this connection, petitioner admits that the brandishing of the revolver was the particular concern of his foreman immediately prior to his discharge. Finally, Mr. McNutt testified that from a distance he believed the revolver to be genuine.

█ The Claims Deputy denied petitioner benefits. The Referee, in a proceeding in which the employer was not represented because of lack of notification, reversed on the sole testimony of petitioner that the employer tolerated drinking. The Board reversed the decision of the Referee and held that the petitioner was discharged "for just cause" within the meaning of 19 Del.C. § 3315(2). The Board predicated its decision on the factual finding that petitioner "returned to his job, after being sent home, in a further intoxicated condition with a weapon that would put fear in the other employees and disrupt the normal operation of the business . . .". Such findings of Board as to the facts, if supported by the evidence and in the absence of fraud, shall be conclusive, and the jurisdiction of the Court shall be confined to questions of law. 19 Del.C. § 3323(a). Furthermore, the credibility of the witnesses, the weight of their testimony, and the reasonable inferences to be drawn therefrom are for the Board to determine.

Petitioner argues that there was insufficient proof that he was discharged for any acts other than his intoxication per se. In this connection, petitioner suggests that since the pistol incident was excluded from the discharge "write up" it could not be causally related to his discharge and accordingly should be excluded from the consideration of the Court. Given this premise, petitioner contends that while intoxication constitutes misconduct, it provides no grounds for disqualification under § 3315(2), if condoned by an employer. Cf. Weaver v. Employment Security Commission, 274 A.2d 446 (Del.Super.Ct.1971). Petitioner points out that the foreman impliedly condoned drinking that day by mild disciplinary action, and that condonation was the basis for the Referee's decision allowing petitioner compensation. In the alternative, petitioner maintains that the mere act of returning to his employer's premises after having been sent home does not constitute a "wilful or wanton act" under Abex Corporation v. Todd, 235 A.2d 271 (Del.Super.Ct.1967).

*Abex* defines "just cause" in the present context as a "wilful or wanton act in violation of either the employer's interest, or of the employee's duties, or of the employee's expected standard of conduct". In this connection, petitioner contends that, unless this Court should indulge in the unwarranted assumption that an intoxicated man is capable of wanton or wilful disregard of his employer's orders, the above standard does not embrace petitioner's conduct. Petitioner, accordingly, concludes that the only culpable act that may be imputed to him is a single instance of insubordination (to-wit, returning to work after being sent home), which in itself is insufficient cause to withhold benefits under the authority of the *Weaver* case.

■ Pursuant to the authority delegated to the Board under 19 Del.C. § 3321, it was not improper for the Board to consider testimony with respect to petitioner's disorderly conduct. The employer has never taken any position other than that the petitioner was dismissed for being drunk *and disorderly*. The testimony was germane to the proceedings before the Board. The testimony of Mr. McNutt, petitioner's foreman, that petitioner's discharge was due to his intoxication and the related disturbance refutes any inference drawn from the "write up". More significantly, petitioner essentially admitted in his testimony before the Board that the immediate precipitating cause for the conference between his foreman and the superintendent which resulted in his discharge was the disturbance involving the toy revolver. In light of this it must be concluded that this incident was the predominant factor bearing on petitioner's discharge.

■ Assuming arguendo that petitioner was discharged only for his intoxication, this Court disagrees with petitioner's contention that his acts were condoned. *Abex* tells us that the employee's "expected standard of conduct" is relevant to determining "just cause" for discharge. The *Weaver* case states that "a single instance of irresponsible failure to heed an employer's instructions does not rise to the level of a 'wilful or wanton act in violation of . . . the employer's expected standard of conduct' . . . where it appears that the employer tolerated previous actions of similar severity without warning". Petitioner suggests, citing *Weaver*, that his foreman impliedly condoned drinking that day by mild disciplinary action. This Court does not adopt this argument. In the Court's opinion, the absence of advanced warning concerning the *consequences* of given acts, as opposed to notice of their impropriety, does not preclude a discharge for wilful misconduct. Hohnstock v. Unemployment Comp. Bd. of Review, 196 Pa.Super. 500, 175 A.2d 167 (1961). Mr. McNutt's testimony to the effect that drinking was never allowed on duty, if believed, was a sufficient basis from which the Board might have inferred that petitioner was on notice that drinking was not tolerated.

■ Finally, petitioner asserts that an intoxicated man is incapable of a wanton or wilful disregard of his employer's orders. In proceedings of this type, wilful or wanton conduct requires a showing that one was conscious of his conduct or recklessly indifferent of its consequences. 46 Words and Phrases, "Wanton or Willful", p. 20. It need not necessarily connote bad motive, ill design, or malice. This Court finds that the very act of becoming intoxicated is such a conscious act as to foreclose petitioner from disclaiming responsibility on these grounds.

For the reasons hereinbefore stated, the decision of the Board should be affirmed.

It is so ordered.